Haggerty *v.* The People.

No. 1.

(GENERAL TERM, THIRD DEPARTMENT, NOVEMBER, 1872.)

If during his term of punishment a prisoner escapes from jail or State prison, where he is confined upon conviction of crime,he may be retaken after the term and held to answer for the residue of the time for which he was imprisoned, under the provisions of § 20, 2 R. S., 685.

The clause of that section which directs the prisoner's imprisonment until tried for an escape, or discharged on failure to prosecute therefor, is not a limitation of the time of imprisonment upon his first offence, but is, it seems, intended to provide for his retention for additional punishment for the escape.

A prisoner, escaped during his term of imprisonment, and retaken after the time for which he was imprisoned has expired, may be returned to State prison, for a time equal to the remainder of his term unserved, by the court which sentenced him, upon information or suggestion on behalf of the people and trial of the question of his identity and escape.

Haggerty *v.* The People.

The Court of Sessions of Albany county has jurisdiction to direct such reimprisonment of a criminal upon whom it has passed sentence.

The provision of the Constitution (art. 1, § 6) which declares that "no person shall be held to answer for a capital or other infamous crime * * * unless on presentment or indictment of a grand jury," does not affect the remedy by "information" to enforce punishment already due under sentence.

THIS is a writ of error to review a proceeding in the Albany Sessions, on returning the plaintiff in error to the Clinton State prison to serve out an unexpired term, on the ground that he had escaped from the prison.

At the Albany Sessions, held on the 13th of March, 1872, Haggerty being brought to the bar, the district attorney produced to the court an indictment of Haggerty, in September, 1868, in the same court, for robbery in the first degree, with the minutes of his conviction for robbery in the second degree, and sentence to the Clinton prison for three years.

The district attorney thereupon filed an information or suggestion in the following form :

At a Court of Sessions held in and for the county of Albany, at the City Hall in the city of Albany, on the 13th day of March, 1872.

Present—Hon. T. J. VAN ALSTYNE, *County Judge.*

EDWARD GIBBONS, and

WM. J. REED,

*Justices of the Sessions.*

THE PEOPLE OF THE STATE OF NEW YORK
*against*
THOMAS HAGGERTY.

And now at this day, before this court, come the people of the State of New York, by Nathaniel C. Moak, their district attorney, and allege and show to this court that heretofore, to wit, of September term of a Court of Sessions, held in and for the said county of Albany, in the year of our Lord

one thousand eight hundred and sixty-eight, the defendant, Thomas Haggerty, was duly indicted for the crime of robbery in the first degree. That afterward, at a Court of Sessions duly held in and for the said county of Albany, on the eighteenth day of September, in the year of our Lord one thousand eight hundred and sixty-eight, the said Thomas Haggerty was duly tried by and before the said court, found guilty and duly convicted of the offence of robbery in the second degree. Whereupon, the said court having jurisdiction of the offence and of the person of the defendant, duly sentenced the said Thomas Haggerty to be confined in the State prison at Clinton, at hard labor, for the term of three years. That the said Thomas Haggerty was duly committed to the said State prison at Clinton, under and pursuant to such conviction and sentence; that on the fourteenth of October, in the year of our Lord one thousand eight hundred and sixty-nine, the said Thomas Haggerty, while confined as a prisoner in the said State prison, upon a conviction for the said offence of robbery in the second degree as aforesaid, did escape therefrom and go at large whithersoever he would, and hath ever since been and continued so at large. Wherefore, the said people pray that this court will order the execution of its former judgment, and that execution thereof may be awarded against said Thomas Haggerty; that he be returned to said State prison at Clinton, there to be imprisoned and confined therein, at hard labor, for the remainder of the term for which he was sentenced to be imprisoned as aforesaid, and for that portion of the said imprisonment he has not suffered, to wit, for the term of one year eleven months and four days.

NATHANIEL C. MOAK,
*District Attorney.*

Whereupon, the said allegations and suggestions having been duly filed and entered of record by order of the said Court of Sessions, upon this it is asked and demanded of the said Thomas Haggerty, in his own proper person, by the said court, whether he hath anything to say why execution of the

former sentence and judgment of this court should not be awarded against him, who nothing saith; whereupon the court ordered the following to be entered upon the record:

Upon this the said Thomas Haggerty said nothing; whereupon the court directed the clerk to enter a plea or answer by the said Thomas Haggerty that he is not the person mentioned in the record, and, if so, that he did not escape as alleged by the said people by their district attorney.

And the same was so entered.

To this the said people of the State of New York, by Nathanial C. Moak, their district attorney, pleaded as follows: To which the said people, by their district attorney, reply, *ore tenus*, that he, the said Thomas Haggerty, is the same person and did escape as before alleged, and this the said district attorney is ready to verify.

On motion of the district attorney a jury was then empanneled to try the issues thus presented, and a trial thereof had.

The district attorney produced a copy of the indictment, minutes of the conviction and sentence, certified by the county clerk, as required by the Revised Statutes. (2 R. S., 739, § 10; 2 Edm. St., 763.) He then proved by McCotter, a deputy sheriff at the time of Haggerty's conviction, that he was the person convicted, and that after his conviction he conveyed him back to the jail.

The district attorney then produced and read in evidence the copy minutes of Haggerty's conviction on which he was committed to the prison, and proved by O'Brien, one of the keepers of the prison, that on the 14th of October, 1869, while Haggerty was in his gang, he and four others forcibly escaped from the prison, and that Haggerty had never been returned. No evidence was offered by Haggerty.

The court charged the jury, who returned a verdict "that the defendant, Thomas Haggerty, was indicted, tried, convicted, sentenced and committed to the State prison, under and in pursuance of the sentence, as stated in the allegations of the people; also, that he escaped from said prison at the

Haggerty *v.* The People.

time and in the manner stated in the said allegations, and hath ever since been and continued so at large."

The record proceeds:

'Whereupon the said Court of Sessions, in and for the said county of Albany, rendered and gave the following judgment and sentence:

"It is ordered, adjudged and determined by this court that the execution of the said former judgment thereof be awarded against said Thomes Haggerty ; that he be returned to said State prison at Clinton, there to be imprisoned and confined therein at hard labor for the remainder of the term for which he was sentenced to be imprisoned as aforesaid, and for that portion of the said imprisonment he has not suffered, to wit, for the term of one year, eleven months and four days."

*Jacob H. Clute*, for the plaintiff in error. The County Sessions, of Albany county, had no jurisdiction over the person of Thomas Haggerty, or of the case on the indictment for robbery, after sentence passed on the 18th day of September, 1868. The commitment had been made by the court, and the defendant had been imprisoned in the State prison at Clinton. If he escaped, and was retaken before the expiration of the term for which he had been sentenced, he could be taken back to the prison and kept there until the term expired, and no longer. There is no statute giving the County Sessions power to order the enforcement of its sentence, after an escape and the expiration of the term of imprisonment. The defendant could not be tried except on indictment. (Art. 1, sec. 6, Cons. S. N. Y.; Art. 5 [Amdts. 1789] Cons. U. S.)

*Nathaniel C. Moak*, district attorney, for the people. The method or proceeding adopted by the district attorney to return Haggerty, was correct.

By article one, section seventeen, of the Constitution of this State, such parts of the common law as are not abrogated thereby, or changed by statute, are made a part of the law of this State.

Haggerty *v.* The People.

At common law there were two methods of proceeding against persons as criminals, one by information presented by the prosecuting officer upon his own motion, and the other by indictment by a grand jury. (1 Chitty's Cr. Law, 844–847; Cole on Crim. Informations, 9; 1 Bish. Crim. Proc. [2d ed.], §§ 36, 141–147, 712–715; 1 Whart. Cr. Law, §§ 213, 214; see also 1 Bishop Crim. Proc. [2d ed.,] § 141.)

Our Constitution (article 1, § 6) upon the subject of crimes is as follows:

"No person shall be held to *answer* for a capital or otherwise infamous crime, * * * unless on presentment or indictment of a grand jury; and in any trial, in any court whatever, the party accused shall be allowed to appear and defend in person and with counsel as in civil actions."

This prohibition applies only to a presentment on which a party charged with crime is sought to be placed on trial therefor and convicted thereof, and consequently leaves the common-law remedy, by information, in force in all other cases where it may be necessary to resort to it.

The present proceeding was not a trial of Haggerty for the crime of robbery, nor for the crime of escaping from the prison. (1 Bish. Crim. Proc, 2d ed., 1208–1212.)

In the *King* v. *Okey* and others (1 Levinz., 61) it is said: "Whereupon they pleaded that they were not the persons, and issue was taken thereon and a jury returned immediately to try it, which was done; and they were not permitted to challenge peremptorily, *for they are not now to be tried for the treason,* but only of the identity of persons." In a note to *Sir Charles Ratcliffe's Case,* in 18 Howell State Trials, 438, giving the case from the records of the court, it is said the accused was denied a peremptory challenge; "this being a proceeding very different from the trial upon a not guilty, in an original prosecution on a charge of high treason or other crime, the identity of the person being the single fact to be inquired of, and a case in which the crown had a right by law to proceed instanter."

Indeed, it was not a trial for any crime, nor was defendant

sentenced for any. The trial took place and the sentence was imposed in 1868. Haggerty not having suffered the imprisonment imposed, the court was simply asked to enforce its former judgment, and the means to be used to determine whether the sentence had been executed was a matter of practice for the court. The accused was given the benefit of a fair hearing of the question before a common-law jury, and was confronted by the witnesses to prove the facts, with the privilege of cross-examination.

This was the method adopted in *Ratcliffe's Case* (18 Howell's St. Tr., 430) and in the *King* v. *Okey* (1 Levinz, 61). Blackstone gives the form of a record in such a proceeding in his appendix to the fourth volume of his Commentaries. (4 Bl. Com., Appx. No. 3.) It is not as full as that in the present case, nor did the attorney-general even file an information. It is fairer to the prisoner, however, to do so, in order that he may be apprised of what the prosecution claims. He certainly is not injured by greater particularity than the law requires.

It is, perhaps, true that the prison authorities, if Haggerty were caught, could reclaim him; but suppose they did not see fit to do so, have not the people a right to insist that the sentence of the court shall be carried out and an interest in the same being done?

In *Bland* v. *The State* (2 Ind., 608), the prisoner was convicted of murder and sentenced to be hung. Previously to the day named for his execution he made his escape, and was afterward retaken by the sheriff, and kept in custody until the then next term of the court, at which term he was again brought before the court, and the fact of his escape, etc., being made known, the court again awarded execution against him on the former judgment. On error to the Supreme Court, the order to carry out the sentence was affirmed, the court (p. 611) saying: " There was not the slightest ground for this plea. The defendant not having been executed conformably to the previous judgment, in consequence of his escape from custody, the court had, after his recaption, the

same jurisdiction over him, for the purpose of awarding execution, that they had when said judgment was rendered. The following case is in point: In 1716, one Charles Ratcliffe was convicted, in England, of treason, and whilst he was under sentence of death, he escaped out of prison and went to France. About thirty years afterward, he was taken and brought before the Court of King's Bench, and was asked what he had to say why execution should not be awarded and done upon him according to the said judgment. He pleaded that he was not the identical Charles Ratcliffe named in the record. The attorney-general replied that he was. The issue was found against the prisoner, and the court awarded execution, appointing a day for that purpose, and he was beheaded accordingly. (*Rex* v. *Ratcliffe*, 18 Howell's St. Tr., 429; 9 Hargrave's St. Tr., 582; 1 Wilson's Rep., 150; Foster's Crown Law, 40.)"

2d. The Court of Sessions is a continuous court. It is the *court* which acts, and not the persons who compose it. (*Lowenberg* v. *The People*, 27 N. Y., 340; *Ferris* v. *The People*, 35 N. Y., 128; *People* v. *Quimbo Appo*, 20 N. Y., 543–547; *People* v. *Naughton*, 7 Abb. N. S., 422; *Keen* v. *The Queen*, 2 Cox Cr. Cas., 341; *Regina* v. *Charlton*, 1 Crawf. & Dix, 315, 320.)

It had power, therefore, to carry out its judgment at a former term, and to see that such judgment was executed.

3d. Haggerty was sentenced to suffer three years' imprisonment at hard labor. By staying a little over a year, committing a felony by escaping, and remaining secreted until after three years from his trial or first incarceration, the judgment of the court was not executed, nor had he suffered the imprisonment. The whole subject is ably and clearly treated by Mr. Bishop, in his work on Criminal Procedure (2d ed., §§ 1208–1212).

Our statutes provide (2 R. S., 685, § 20; 2 Edm. St., 707) that "If any prisoner confined in a jail, or in a State prison, upon a conviction for a criminal offence, shall escape therefrom, he may be pursued, retaken and imprisoned again, *not-*

withstanding the term for which he was imprisoned may have expired at the time when he shall be retaken, and shall remain so imprisoned until tried for the escape, or until he be discharged, on a failure to prosecute therefor."

At the Sessions Haggerty's counsel claimed the latter clause of this section, by implication, provided that when retaken the prisoner could only be held until he could be indicted and tried for the offence of escaping.

The statute of Indiana is word for word with ours. (2 G. & H., 454, §§ 55, 56; 29 Ind., 107.) In the case of *Ex parte Clifford* (29 Ind., 106), Clifford sued out a *habeas corpus* to the warden of the prison in which he was confined. The warden returned (29 Ind., 107), "That he held Clifford by virtue of a commitment which is set forth in the return, showing that the latter was, by the Montgomery Circuit Court, found guilty of grand larceny, and, on the 13th of September, 1862, sentenced to be imprisoned in the State prison for three years. The return further avers that, on the 9th of January, 1863, Clifford escaped and remained at large until the 4th of April, 1867; that on that day he was returned (having been rearrested) to his custody, as such warden, and that he holds him by virtue of such commitment." The court below held the return good and remanded the prisoner. He appealed to the Supreme Court. That court, after reciting the statute of the State, proceeds (pp. 101–109) as follows: "The question presented for our consideration is whether the appellant can avail himself of the fact that, while he was illegally at large, the date at which his imprisonment was to have terminated has passed. The law is stated by Russell, in his work on Crimes (vol. 1, p. 421), thus: 'It seems to be clearly agreed, by all the books, that an officer making fresh pursuit after a prisoner, who has escaped through his negligence, may retake him at any time afterward, whether he find him in the same or a different county; and it is said generally, in some books, that an officer who has negligently suffered a prisoner to escape may retake him wherever he finds him, without mentioning any fresh pursuit; and,

indeed, since the liberty gained by the prisoner is wholly owing to his own wrong, there seems to be no reason why he should have any manner of advantage from it.' The sections of the statute we have cited are contained in ' An act defining felonies and prescribing punishment therefor.' It did not require legislation to authorize the recapture of an escaped prisoner, and his confinement until he has served out the full continuous term of his sentence; nor would we expect, in such an act, any limitation of that right. A new crime is defined and a punishment is prescribed; that punishment, however, is fixed, without regard to whether the prisoner escaping was recaptured immediately after his escape, and has served out his full term, or whether he has not been recaptured until the date when his imprisonment would have ended has passed. If, in the latter case, he avoids serving his original term of imprisonment, and is only punished for his escape, as is the prisoner recaptured immediately after his flight, the penalty is unequal and unreasonable, and amounts to a premium upon success in avoiding capture. The intention of the framers of the law must be the chief guide to the true meaning of the statute. And this is to be gathered ' from the occasion and necessity of the law, from the mischief felt, and the objects and the remedy in view; and the intention is to be taken or presumed according to what is consonant to reason and good discretion.' (1 Kent, 511.) The reason for and the object of the statute are a clue to the true meaning; and when the real intention is accurately ascertained, it will always prevail over the literal sense of the terms. (15 Johns., 358; 14 Mass., 92; 4 Coms., 144.) For it is a maxim of interpretation, as old as Plowden, that ' a thing within the letter of the statute is not within the statute, unless it be within the intention of the makers.' (Plowd., 18, 88; 3 Barn. & Ald., 266; 4 id., 212; 3 Cow., 89; 4 Litt. [Ky.], 377.) In this act the declared purpose is to define a felony and prescribe its punishment. We do not think it was intended to change the common-law rule in regard to the capture of escaped felons, but simply to authorize the

additional holding, after the sentence of the law has been ful-
filled, not evaded, until opportunity is given for a prosecution
for the new offence of escape. The word ' term,' in the fifty-
sixth section cited, is used, we think, as the synonym of the
word 'time.' It is objected that this construction leaves it to
the officer in charge of the prison to determine the question
of the escape and its date, but a writ of *habeas corpus* will
secure a judicial examination of this question."

In *State* v. *Wamire* (16 Ind., 357), it was held that " if
the defendant escapes after sentence and before execution,
he may be retaken, brought into court, identified and resen-
tenced."

In *Cleek* v. *The Commonwealth* (21 Gratt., 777), Cleek
was sentenced to be confined in the jail of Bath county for
ten months, to commence on the 13th of July, 1870. On
the 21st of September, 1870, he escaped, and was not appre-
hended or rearrested and returned until the 14th of January,
1871. He sued out a *habeas corpus*. The court refused to
discharge, and remanded him. On error to the Supreme
Court of Appeals the order of the court below was affirmed,
the court saying (pp. 781–784): " Could the plaintiff in error
be lawfully detained in prison, after the expiration of ten
months next succeeding the verdict, and for a period equal
to that which elapsed after his escape from jail, and while he
was going at large during the said term of ten months ? The
jury found the prisoner guilty, and ascertained ' that he be
imprisoned in the county jail for the term of ten months,
and that he pay a fine of ten dollars.' The judgment of the
court was for the fine and costs, and that he be imprisoned
in the said jail for the term of ten months, commencing on
the 13th day of July, 1870. He had not been so imprisoned
for the said term at the expiration of that period of time
next and after the verdict; having escaped from said jail on
the 21st of September, 1870, and remained at liberty until
the 14th of January, 1871, when he was retaken and com-
mitted. He will not have been so imprisoned for the said
term until he shall have remained in jail, after the expiration

of the ten months from the date of the verdict (which ten months expired on the 13th day of May, 1871), for a period equal to that which elapsed between the said 21st of September, 1870, and the said 14th of January, 1871; that is, a period of three months and .wenty-three days. He has not yet been subjected to the entire judgment of the court. He has avoided it by his own voluntary act, and that, too, a criminal act. Surely a man cannot avoid the punishment of one crime by committing another; cannot get rid of an imprisonment to which he has lawfully been condemned by breaking jail and making his escape. Nothing would seem to be plainer than this. It may be said that the jailer must be governed by the term prescribed by the judgment, commencing at and running continuously from the date of the judgment; that when that term, so commencing and running, is ended, he can no longer detain the prisoner under the judgment; and that it would be dangerous to give to a mere ministerial officer power to prolong the imprisonment for the purpose of obtaining compensation for so much of it as may have been avoided by an escape. But there would be no difficulty in ascertaining the measure of such compensation. The jailer would always know the precise period of the escape and of the recapture, and would act at his peril. If he erred, the party aggrieved would have a prompt and efficient remedy by *habeas corpus*, in which the facts, on which the legality of the act of the jailer would depend, could be easily and clearly ascertained. He would also have a remedy by an action of false imprisonment. It may be further said that the escape itself is a criminal act, for which the party may be prosecuted and punished; that such punishment may embrace what remains due and unpaid for the original offence; that that is the proper and only way of completing the punishment of the original offence, and that in this case a prosecution for escape has actually been commenced, and is now pending against the plaintiff in error. The answer to this objection is, that the two offences are distinct, and each is subject to its appropriate punishment. Having been

convicted of the original offence, and sentenced to punishment therefor, he must suffer that punishment and cannot avoid it by the commission of another offence, for which he may or may not be prosecuted and punished."

In *Dolan's Case* (101 Mass., 219) it was held that "the sentence of a convict to imprisonment, for a term expressed only by designating the length of time, is to be satisfied only by his actual imprisonment for that length of time, unless remitted by legal authority; and if a sentence is limited to take effect upon the expiration of a former sentence, its period will not begin to run until the first sentence has been so fully performed or legally discharged.

"If a prisoner under sentence, to be imprisoned for a term expressed only by the length of time, escapes during the term, the period during which he remains at large does not abridge the period of imprisonment which remains for him to suffer before fully performing the sentence."

In *Leftwick* v. *The Commonwealth* (20 Gratt., 716, 722), the Court of Appeals of Virginia held that, "Where the prisoner escaped after sentence, the court would not hear the case on appeal until he returned into custody. But that when the court had heard the case without knowledge of the escape, and reversed the judgment against the prisoner, it would not set aside the judgment."

Present—MILLER, P. J.; P. POTTER and PARKER, JJ.

By the Court—MILLER, P. J. The statute (2 R. S., 685, § 20; 2 Edm. St., 709) provides that "If any prisoner, confined in a jail or in a State prison upon a conviction for a criminal offence, shall escape therefrom, he may be pursued, retaken and imprisoned again, notwithstanding the time for which he was imprisoned may have expired when he shall be retaken, and shall remain so imprisoned until tried for an escape, or until he shall be discharged on a failure to prosecute therefor." Under this provision I think it is clear that the prisoner escaping can be held to answer for the residue

Haggerty *v.* The People.

of the term for which he has been sentenced, even if retaken after the expiration of the time. The statute is explicit that he may be retaken and imprisoned although the time has expired, and evidently means upon the sentence from which he has temporarily escaped. The latter clause of the enactment was not intended as a limitation or restriction on the first, but to provide for an additional imprisonment for the escape. If it was designed merely to punish for the escape, then the provision, "notwithstanding the term for which he was imprisoned may have expired at the time when he s hal be retaken," would be useless, of no avail whatever, and should have been omitted. Besides, it is unreasonable to suppose that a prisoner, by committing another crime, could entirely evade and escape the consequences of the one for which he had been incarcerated. No such absurdity was intended; and it would be doing violence to the spirit of the act to give it any such construction. We are not, however, without authority upon the question discussed. The statute of Indiana is precisely like our own (2 G. & H., 454, §§ 55 and 56); and it has been held in that State that a prisoner who has been retaken may be compelled to serve out the remainder of his time, even although it had expired before he was arrested and taken into custody. (*Ex parte Clifford*, 29 Indiana, 106; see, also, *State* v. *Wamire*, 16 id., 359; *Cleek* v. *Commonwealth*, 21 Gratt., 177; *Dolan's Case*, 101 Mass., 219; *Leftwich* v. *Commonwealth*, 20 Gratt., 716; *Bland* v. *The State*, 2 Indiana, 608.)

The prisoner being thus liable to serve out the remainder of his term upon his old sentence, I see no objections to the proceedings taken by the district attorney to return him to the State prison, and am of the opinion that the Court of Sessions of Albany county, in which the prisoner was sentenced, and which is a court that has a permanent status, recognized by law, had jurisdiction to enforce the sentence and to carry out the judgment which had been previously rendered. Although the proceeding is novel in this State, perhaps, because no occasion has arisen where it has been

required, yet it appears to have been sanctioned by the common-law practice in similar cases.    Two methods of proceeding against criminals are sanctioned at common law.    The one by information presented by the prosecuting officer on his own motion, and the other by indictment by a grand jury.    The rule is laid down by Bishop (1 Crim. Proc., § 141) as follows: "According to the common law of England, as it stood at the time when the body of the English common-law was by our ancestors brought over by them to this country, the proceeding of criminal information is, in cases of misdemeanor (with the exception of misprision for treason, which is a misdemeanor), a public remedy against the wrong-doer, concurrent with the indictment; subject, however, to practical exceptions and limitations.    The doctrine is in an English book stated thus: "An information for an offence is a surmise or suggestion upon record, on behalf of the king (or queen regent), to a court of criminal jurisdiction, and is, to all intents and purposes, the king's suit.    It differs principally from an indictment in this, namely: that in an indictment the facts constituting the offence are presented to the court upon the oath of a grand jury; whereas, in informations, the facts are presented by way of suggestion or information to the court by some authorized public officer in behalf of the crown.    Criminal informations derive their origin from the common law.    They may be filed by the attorney-general, *ex officio*, upon his own discretion, without any leave of the court."    (See also Chitty's Crim. Law, 844, 847; Cole on Crim. Infs., 9; 1 Bishop's Crim. Proc. (2d ed.), §§ 36, 141, 147, 712, 715; 1 Whar. Cr. Law, §§ 213, 214; *King* v. *Okey et al.*, 1 Levinz, 61; *Ratcliffe's Case*, 18 Howell St. Tr., 430; Foster's Cr. Law, 40; 4 Black. Com., Appx. No. 3.)    A prisoner who has escaped is always liable to arrest, and the subject as well as the mode of procuring his return is fully stated in 2 Bish. Cr. Pro., § 1208, to and including § 1211.

The provision of the Constitution (art. 1, § 6) which declares that "no person shall be held to answer for a capital or other infamous crime"    *    *    *    "unless on presentment or

Haggerty *v.* The People.

indictment of a grand jury," etc., applies to presentments for crimes, without affecting the remedy by information, when it may be necessary to revert to it as a proceeding to enforce punishment already incurred under a prior conviction and sentence. There being no conflict with the Constitution in such a proceeding, and the common law being in force in this State, where not abrogated or changed by statute (Const., art. 1, § 17), the court proceeded according to law to determine the question whether the prisoner was the person who had been previously sentenced, and to direct that he be returned to the State prison to serve out the remainder of his time. The judge in his charge to the jury made some remarks in reference to the prisoner's not being a witness on his own behalf, but he subsequently expressly withdrew that part of the charge and told the jury that they were not to take it into consideration at all.

I am inclined to think that if there was any error in this respect, it was cured by the explanation which followed the charge, within the principle laid down in *Ruloff* v. *The People* (45 N. Y., 213).

As the Court of Sessions had jurisdiction and there was no error in the proceedings, they must be affirmed.

Proceedings affirmed.