THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* EDWARD J. COURTNEY, APPELLANT.

*Criminal law — Chap. 678 of 1869, allowing a person accused of crime to testify in his own behalf, is constitutional — what questions may be put to him to impeach him — what testimony is sufficiently material to the issue, to support an indictment of perjury if it be false.*

The defendant was tried and convicted of perjury committed upon his trial in the Court of General Sessions for forgery. The indictment alleged that upon the former trial he was duly sworn as a witness in his own behalf and testified that he had never been arrested upon any charge of manufacturing counterfeit money in his life; that he was never in any prison; that he was never in the Eastern penitentiary, in the city of Philadelphia, in the State of Pennsylvania; that he had never served a term of imprisonment in the eastern district of Pennsylvania, and that he had never gone by any other name than that of Edward J. Courtney. The indictment in this case alleged and the jury found that the contrary of each of these statements was true.

*Held,* that the act, chapter 678 of 1869, under which the defendant was allowed to testify in his own behalf on the trial for forgery, was constitutional and valid.

That the defendant, having elected to become a witness in his own behalf, occupied the same position as any other witness, and was subject to be fully examined, in conformity with the established rules of evidence, in order to contradict any evidence he might have given, or to impeach or impair his credibility.

That the questions as to his confinement were properly put to him, and that the testimony given by him in answer thereto, and which was alleged in this indictment to be false, was material to the issue therein and capable of supporting an indictment for perjury.

Upon the trial it was shown that the defendant had been imprisoned under another name for the offense charged in a penitentiary in Philadelphia, commonly known as the Eastern penitentiary, but the correct name of which was the Eastern State Penitentiary of Pennsylvania.

*Held,* that the variance, if any, was an immaterial one in no way prejudicial to the defendant.

APPEAL from a judgment of the court of General Sessions over-ruling the appellant's demurrer to the indictment and also from the judgment and conviction under such indictment.

*William F. Kintzing* and *A. H. Purdy*, for the appellant.

*John Vincent*, for the respondent.

DAVIS, P. J.:

The appellant was indicted for the crime of perjury. The perjury for which the indictment was found was alleged to have been com-mitted on the trial of an indictment in the court of General Sessions against the appellant for the crime of forgery. The appellant offered himself as a witness in his own behalf, and being duly sworn gave testimony to the effect that he, the said Edward J. Courtney, had never been arrested upon any charge of manufacturing counter-feit money in his life; that he, the said Edward J. Courtney, was never in any prison, and that he was never in the Eastern peniten-tiary, in the city of Philadelphia, in the State of Pennsylvania, and that he had never served a term of imprisonment in the eastern dis-trict of Pennsylvania, and that he had never gone by any other name than that of Edward J. Courtney.

The indictment averred the contrary of each of these statements to be true, and charged the appellant with having " falsely, wickedly, willfully, knowingly, unlawfully and corruptly committed willful and corrupt perjury " in giving this testimony. To this indictment the appellant, by his counsel, filed a demurrer in writing on the ground that the facts stated in said indictment did not constitute a crime. Upon the hearing of the demurrer the court overruled the same and ordered that the defendant plead to the indictment.

The principal point presented by the demurrer is that the statute under which the appellant was permitted upon the trial of the indictment for forgery to offer himself and be sworn as a witness on his own behalf is unconstitutional. The statute is in these words : " In the trial of all indictments, complaints and other proceedings against persons charged with the commission of crimes or offenses, and all proceedings in the nature of criminal proceedings in any and all courts and before any and all officers and persons acting judicially, the person so charged shall, at his own request, but not otherwise, be

deemed a competent witness, but the neglect or refusal of any such person to testify shall not create any presumption against him." (Laws of New York, 1869, chap. 678, p. 1597.)

Section 6 of article 1 of the Constitution of this State declares that no person shall be compelled in any criminal case to be a witness against himself.

The plain signification of this provision is best expressed in its own words. It is designed to prohibit the compulsion of any witness, in any criminal case, to give testimony against himself, and it was aimed, of course, at all the proceedings of that nature by which persons charged with crime could be compelled in any manner to be witnesses against themselves. It was the long established rule of the common law that no person charged with crime could be called as a witness in his own behalf. On the trial of any indictment his mouth was effectually closed, first by the provision of the Constitution which prevented the people from calling him to testify, and second, by the rule of the common law which excluded him from testifying in his own behalf. The act of 1869 was intended to be a relaxation of the common law rule, by allowing a person charged with crime, *at his own request*, but not otherwise, to "be deemed a competent witness." It followed the previous enactments which had enabled parties in all civil actions to be witnesses on the trial of their own suits; and it was intended to enable a person accused of crime to lay before a court and jury such evidence as he might be able to give in answer to or explanation of the alleged offense, and of the evidence tending to establish the same. It sought to prevent his omission to make himself a witness from creating any presumption against him. The idea of compulsion does not enter into the statute at all. The constitutional provision remains in full force unaffected by the statute.

But it is argued that since the statute permits a person accused of crime to make himself a witness in his own behalf, therefore, courts or jurors will be in some degree prejudiced against him, by his neglect to avail himself of the permission. But the statute expressly provides that his neglect or refusal shall not create any presumption against him, and, therefore, it cannot be *legally* assumed that any such presumption can or will arise from the mere existence of the statute. The supposed moral coercion "is not a

matter of legal cognizance for the purpose of holding that the statute is void as against the Constitution." Nor indeed, in practice, does it have any such effect. The courts, if desired to do so, are always extremely careful to caution the jury against indulging in any such presumption; and it seems to us a *non sequitur* to say that there is or can be such a compulsion as the Constitution prohibits, in the simple fact that the law has conferred upon a party charged with crime a privilege of which, at his own option, he may or may not avail himself.

The question of the policy or expediency of the law is not presented for consideration by the demurrer; and, of course, it is not our province to pass upon that. Any party may waive a constitutional provision in his own behalf at any time, and the waiver, when properly made, puts him precisely in the position as though the constitutional provision in his favor did not exist. It follows, therefore, and is now well settled, that where, under the provisions of the statute above cited, a person accused of crime elects to become a witness in his own behalf, he occupies the same position as any other witness and may be fully examined in conformity to the established rules of evidence to contradict any testimony he may give, or to impeach or impair his own credibility, in the same manner as that of any other witness may be impaired.

We are referred to the cases of *Ruloff* v. *People* (45 N. Y., 213), and *Connors* v. *People* (50 N. Y., 240), for the expression of views in decided hostility to the policy or constitutionality of the law of 1869. But the question of its constitutionality was not before the court, and there is nothing in the opinions to lead us to the conclusion that the statute is unconstitutional. Those opinions were delivered at a time when the act of 1869 was in general disfavor with lawyers accustomed to the former rule, and before its policy had been vindicated or tested by experience. It may be said to be doubtful whether the same views would be expressed after the experience of the effect of the statute for the last ten years.

The other point made under the demurrer is that the testimony set forth in the indictment, and alleged to have been false, was not material to the issue of the trial. The rule undoubtedly is, that the assignment of perjury must be a matter pertinent and material to the issue or case in question. But it is well settled that the credi-

bility of a witness who gives testimony affecting an issue is always material; and hence legal testimony which affects such credibility is always within the issue on trial.

Archibald lays down the rule thus: " Every question in cross-examination which goes to the credibility of a witness is material for this purpose." (Archibald's Crim. Pr., 817.) This rule was declared by the twelve judges in *Reg.* v. *Gibbon* (9 Cox C. C., 108). In *Reg.* v. *Lavey* (3 C. & K., 26), the accused had falsely sworn that she had never been tried in the Central Criminal. Court, and had never been in custody at the Thames police station. On her trial for perjury, these statements were held to be material, and her conviction was sustained. In the *Commonwealth* v. *Bonner* (97 Mass., 587), the witness was asked if he had been in the house of correction for any crime. This question was objected to as immaterial, but it was held te be material. (See, also, *Wood* v. *People*, 59 N. Y., 117; *Reg.* v. *Worley*, 3 Cox C. C., 535; *Reg.* v. *Gibbons*, *supra*; *Reg.* v. *Overton*, 2 Moody Crown Cas. Res., 263.)

In the case of the *United States* v. *Elmersberg*, before BENEDICT, J., this precise question was presented and fully examined, and in the manuscript opinion now before us the court reached the same conclusion we have expressed. We are, therefore, of the opinion that the demurrer was properly overruled.

On the trial the record of conviction in the District Court of the United States for the Eastern District of Pennsylvania, of a person by the name of Christopher Richards, upon his plea of guilty of the offense charged in the indictment, and his sentence thereupon to be imprisoned in the Eastern penitentiary in the commonwealth of Pennsylvania for the term of three years, was put in evidence and witness, who was an overseer in the Eastern penitentiary, was called and testified that the prisoner at the bar was imprisoned in that penitentiary on a sentence of three years, and served his time by the name of Christopher Richards.

Another witness was also called who testified substantially to the same effect, and both witnesses identified the present appellant as the person who was imprisoned by the name of Christopher Richards. It appeared on cross-examination of one of the witnesses that the official designation of the penitentiary, which they called " the Eastern penitentiary," is " the Eastern State Penitentiary of Penn-

sylvania." The assignment of perjury in the indictment is that the appellant testified " that he, the said Edward J. Courtney, had never been arrested upon any charge of manufacturing counterfeit money in his life; that he, the said Edward J. Courtney, was never in any prison, and that he was never in the Eastern penitentiary in the city of Philadelphia, in the State of Pennsylvania, and that he had never served a term of imprisonment in the eastern district of Pennsylvania, and that he had never gone by any other name than that of Edward J. Courtney." It is now insisted that there was a fatal variance in the testimony, inasmuch as it was not shown that the Eastern penitentiary and the Eastern State penitentiary were one and the same institution, and that the evidence that the defendant was in the Eastern State penitentiary was not evidence to show that he was in the Eastern penitentiary.

We do not think there is any force in this objection. The appellant testified that he was never in any prison; that he was never in the Eastern penitentiary in the city of Philadelphia. The evidence showed that he was in a penitentiary; that he had been imprisoned; that he was in the Eastern penitentiary in the city of Philadelphia and State of Pennsylvania, the legal title of which is the Eastern State penitentiary.

It is evident that the common title of the prison was the Eastern penitentiary, and that the legal title of the prison known by that name is the Eastern State penitentiary. If this be a variance, it is not, we think, a fatal or serious one, because it is obvious that the prisoner was not in any degree prejudiced by the omission of the word "State" either in his testimony on the former trial, or in the charging part of the indictment. These are all the points suggested to us on the argument which we deem of sufficient importance to comment upon any further than to say that none of those not noticed by us are of any practical value.

The result is that the judgment and conviction should be affirmed.

BRADY, J., concurred.

DANIELS, J.:

The perjury was assigned in the indictment upon evidence which the defendant himself gave, upon the trial of an indictment against him for forgery. He was sworn as a witness on his own behalf, and

he was asked whether he had been in the Eastern penitentiary in the State of Pennsylvania, whether he had gone by any other name than that of Edward J. Courtney, and whether he had served a term of imprisonment in the eastern district of Pennsylvania. To each of which questions he answered in the negative. Evidence was given upon the present trial, very directly tending to establish the fact that the defendant had served a term of imprisonment in the eastern district of Pennsylvania, and it was substantially upon that he was convicted and sentenced to imprisonment in the State's prison. At the conclusion of the case as it was presented by the people, and also after the defendant had given his evidence, the court was requested to advise the jury to acquit the defendant upon the grounds that the alleged false statements were immaterial, irrelevant, and in no way affecting the issue, and not the subject of indictment for perjury. These requests were denied and the defendant excepted, and such exceptions are now relied upon in support of the appeal.

It is undoubtedly the law that the evidence assigned as perjury in an indictment must be material to the case in which it is given, but to satisfy this rule no specific degree of materiality can be required, neither is it necessary that the evidence should bear directly upon the issue which at the time is being tried. But for the purpose of subjecting the person giving it, when it may be willfully false, to punishment, for the crime of perjury, all that can be required is that it shall have some bearing, either direct or indirect upon the determination of the controlling fact or facts in issue. And when a witness gives material evidence, it is always important to ascertain and discover how much weight or reliance can be placed upon his testimony. Whatever may weaken or tend to discredit his evidence is important and material, and necessarily affects the determination of the issue. (*Shepard* v. *Parker*, 36 N. Y., 517.)

If the testimony of the witness is unassailed by any discrediting circumstances, then it will obviously be attended with greater effect in the determination of the controversy than it would be if he should be shown to be a person unworthy of full credit. Whatever may tend to sustain or support a witness is, therefore, material to the issue so far as it may increase the confidence to be placed in his statement; and, likewise, whatever may tend to discredit him, and

in that manner to reduce the confidence his evidence may deserve, will materially affect the determination of the issue in controversy. No special degree of materiality to create the crime has been defined or required, but all that can be insisted upon is that the evidence itself shall appear to have had some material bearing in the determination of the case; and whatever may tend to the discredit of the witness giving material evidence must be regarded as within this rule. In *Regina* v. *Overton* (2 Moody C. C., 236) it was held that everything was material that affects the credit of the witness; that every question on cross-examination that goes to the credit of the witness is material. The same point was further considered in *Regina* v. *Gibbons* (5 Law Times [N. S.], 805; Law Jour. [M. C.], 98), and the rule, as it has already been stated, was repeated and sustained; and in *Commonwealth* v. *Bonner* (97 Mass., 587) the same conclusion was declared; and in *Commonwealth* v. *Pollard* (12 Metc., 225) it was held generally that evidence which is circumstantially material will be sufficient to sustain an indictment for perjury, and in *State* v. *La Valley* (9 Mo., 824) it was in terms declared by the court that all false oaths which are material upon any and every collateral issue in the progress of the cause are equally punishable as if taken upon the trial in the main issue. (Id., 828.) In *Regina* v. *Lavey* (3 Car. & K., 26) the inquiry made of the witness was very similar to that presented by this case, and it was held to be a proper foundation for an indictment for perjury. That such an inquiry as that which was made of the witness concerning his imprisonment in the Eastern penitentiary of Pennsylvania was material to the credit of the witness, and for that reason could properly be made, was held in *Real* v. *People* (42 N. Y., 270, 280–282). And the same view was taken of it in *Commonwealth* v. *Bonner* (*supra*), and that, in the judgment of all reflecting persons, would have been the effect of the answer if the witness had stated that he had been so confined in prison, for the inference from it would be that his confinement resulted because of his conviction of a criminal offense, and less credit would be due to the statements of such a person than to those obtained from a witness who could not properly be charged with violation of the criminal law. For all the purposes of the present case the evidence was material within the prevailing rule of law upon the subject, and as it was untruth-

fully and knowingly given an indictment for perjury could lawfully be predicated upon it.

It was further urged in support of the appeal that chapter 678 of the Laws of 1869, under which the defendant was allowed to testify, was an unconstitutional exercise of legislative authority. This objection has been taken under that part of section 6, article 1 of the Constitution, which declares that no person shall be compelled in any criminal case to be a witness against himself. But the statute by no construction of language requires the accused to be a witness against himself, but leaves it entirely optional with him, whether he will take the stand in that capacity or not. And it has guarded against the consequences of his neglect to do so, by declaring that the omission shall not create any presumption against him. In form, it has left the accused with the fullest possible liberty upon this subject. But it has been urged, notwithstanding this circumstance, that a moral coercion has been imposed upon him by the act under which he is obliged to become a witness for himself, or to subject himself to the suspicions of guilt by reason of his omitting to do so, and the case of *Ruloff* v. *People* (45 N. Y., 213), has been cited as sustaining this view. But while the policy of the act was there made the subject of adverse criticism by the court, it was not intended to hold that it "violated this restraint of the Constitution. It was considered impolitic for the reason that the failure of the accused to avail himself of the privilege secured by the statute, might lead the jury to believe him guilty. And there may be grounds in extreme cases for such a suspicion. But ordinarily no danger to the accused, as a matter of fact, arises out of this circumstance. For intelligent jurors will usually guard themselves against any presumption unfavorable to the accused, whenever their attention may be directed to the necessity of doing so. The act was passed as a favorable measure of legislation for persons accused of crime, and if it has generally failed to be productive of their acquittal, the fact is to be attributed not to the law, but to the statements and demeanor of the party, when he may be called upon to give evidence in his own behalf. For if he is guilty of the charge made against him, some fact or circumstance will ordinarily appear, producing unequivocal assurance on that subject. It is from that source that the law has not resulted in securing the

acquittal of the accused as frequently as it may have been antici-
pated it would at the time when it was enacted.

The object of this prohibition of the Constitution was not to
prevent the enactment of laws allowing the accused to be sworn in
his own behalf, if he chose to avail himself of that privilege, but it
was to prevent the enactment of laws by which the accused might
be subjected to actual compulsion to give evidence concerning the
subject matter of the accusation. In many European countries laws
of this character existed (2 Story on the Const. [3d ed.], § 1788 ; 4
Sharswood Blackstone, 325-6), and it was with the most unequivocal
design to denounce their propriety and render their repetition
impossible in this State, that this prohibition was inserted in the
Constitution.

Article 5 of the amendments of the Constitution of the United
States contains the same prohibition, and still it was not considered
as an obstacle in the way of the passage of a similar act by the
Congress of the United States.

That act is as broad, and subject to the same qualification, as the
law of 1869 enacted in this state (Sup. to the R. S. of the U. S. [vol. 1,
p. 312], chap. 37 of 1878) ; and like laws have been enacted in very
many of the other States of the Union. But neither of these acts have
been declared to be in violation of this constitutional provision by
any court, either State or national, and that certainly is very forcible
evidence of the conviction that the act is not justly liable to this
objection. Besides that, the defendant voluntarily availed himself
of the privilege secured to him by this act ; and after having done
so, it is difficult to perceive how the objection can be properly
made that any of his rights were violated by availing himself of
this privilege. It must accordingly, therefore, be overruled.

It has also been urged that the question and answer, now made
one of the subjects of the indictment, was an improper one to be
propounded to the defendant as a witness. But when he placed
himself upon the stand and gave his evidence, it was within the
province of the public prosecutor to show by his cross-examination,
if that could be done, that his statements were unworthy of credit ;
for, by making himself a witness, he became subject to the same
rules of cross-examination made applicable to other witnesses in
legal proceedings. (*People* v. *Casey,* 72 N. Y., 394.)

PEOPLE ex rel. FALLON v. POLICE COM'RS.     209

FIRST DEPARTMENT, DECEMBER TERM, 1883.

And if his answer had been that he was confined as a prisoner in the Eastern penitentiary, that would have tended very directly to support this position. (*Brandon* v. *People*, 42 N. Y., 265; *People* v. *Crapo*, 76 id., 288.)

There is a discrepancy between these two cases concerning the propriety of the answer whether the witness had previously been arrested upon a criminal charge. In the first case it was held to be proper, but in the last that practice was condemned, as probably it should be, inasmuch as no inference of guilt can be drawn from the mere circumstance of a criminal arrest.

Other points have been raised in behalf of the defendant, but they are in substance more or less in the nature of repetitions of those which have been considered; and for the disposition of the case it is not necessary that any special attention shall be bestowed upon them. The case in all these respects was properly disposed of on the trial, and the judgment from which the appeal has been taken should be affirmed.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

Judgment affirmed.