EDWARD H. RULOFF, Plaintiff in Error, *v.* THE PEOPLE, Defendants in Error.

If a homicide is committed by one of several persons, in the prosecution of an unlawful purpose or common design, in which the parties have united, and to effect which they have assembled, all are liable to answer criminally for the act; and if such homicide committed within the common purpose is murder, all are guilty of murder.

It is not necessary that the common guilty purpose of resisting to the death any person who should endeavor to apprehend them, must have been formed when the parties went out with the common design of committing larceny, to render all principals in a murder by one of them, perpetrated while making such resistance.

One who is opposing and endeavoring to prevent the consummation of a felony by others may properly use all necessary force for that purpose, and resist all attempts to inflict bodily injury upon himself, and may lawfully detain the felons and hand them over to the officers of the law. Although the use of wanton violence and the infliction of unnecessary injury to the persons of the criminals is not permitted, yet the law will not be astute in searching for such line of demarcation in this respect as will take the innocent citizen, whose property and person are in danger, from its protection, and place his life at the mercy of the felon.

Upon a criminal trial, the presiding judge has no right, in charging the jury, to allude to the fact that the prisoner has not availed himself of the statutory privilege of being a witness in his own behalf; but where such allusion is made, and subsequently, upon his attention being called to it, he states to the jury that there was no law requiring the prisoner to be sworn, and no inference to be drawn against him from the fact of his not being sworn, — *Held*, that this cured the error.

Upon a criminal trial, photographic likenesses, taken after death, of persons whom it is material to identify, may be exhibited to witnesses acquainted with such persons in life, as aids in the identification.

(Argued March 15; decided March 28, 1871.)

ERROR to the General Term of the Supreme Court in the Third department from the judgment of that court affirming the conviction of the plaintiff in error of the crime of murder

in the first degree by the Court of Oyer and Terminer in the county of Broome.

The plaintiff in error was indicted and convicted of the murder of Frederick A. Merrick, at Binghamton, on the 17th day of August, 1870. The deceased was a clerk in a store in the city of Binghamton, and, with a fellow-clerk (Burrows), slept in the store. They were awakened, on the night of the homicide, about two o'clock, and discovered three persons in disguise near their bed. These persons had burglariously entered the store, and had placed and tied up in parcels several packages of goods, ready for removal. The clerks got out of bed, and Burrows came into collision with one of the burglars (supposed to be one Davenport), and, after having been struck by him, seized and threw him, and, wrenching from him an iron instrument called by the witnesses a "chisel" or "box opener," struck him on the head, and the deceased, at the call of Burrows, also inflicted a serious blow upon the burglar. This burglar was seriously injured about the head and face, and called to his comrades for help. The associate burglars, who had gone down stairs, came back, the one supposed to be, and who, for identification, will be called Jarvis, somewhat in advance of the third. As they were coming back, the deceased left Davenport and met Jarvis, and they were seen wrestling together. Burrows then left Davenport and went to the head of the stairs to meet the third burglar, who was then coming up, and threw the chisel at him. This third burglar fired two or three shots, one of which splintered the stair-rail or banister, and Burrows, hit by the splinters, supposing he was shot, fell back, and the burglar came up and went to the deceased, who was then clenched with Jarvis leaning over the counter, and, placing one hand on the back of his head or neck, and a pistol within two or three inches of his head, fired a ball into the brain of the deceased, which rendered him unconscious at once, and resulted in his death in a very short time. The burglars escaped from the building and fled.

The tracks of two persons were discovered the next day leading from the rear of the store to the Chenango river, and

a day or two thereafter the bodies of two deceased persons were taken from the river in the immediate vicinity, and evidence was given tending to identify them as the two burglars who were injured in the encounter with the clerks, and as the persons whose tracks were discovered leading to the river. The plaintiff in error was found skulking in the neighborhood, and was arrested a day or two after the commission of the offence, and evidence was given tending to show that he was the third burglar and fired the shot which resulted in the death of Merrick.

Evidence was also given tending to show former intimate relations between the accused and the two deceased persons, and that they had been known to the public, and had intercourse with each other, under different names. With other evidence to identify the drowned persons as individuals intimately connected and associating with the accused, photographic likenesses taken after death were submitted to relatives and acquaintances, who were permitted to give their opinion, as witnesses, as to their identity. Certain burglars' tools and other instruments, found in the desk of the accused in New York, were permitted to be given in evidence on the trial. Several questions were made upon the charge of the judge, which are sufficiently stated in the opinion of the court.

The accused was convicted of murder in the first degree, and the conviction was affirmed, on error, by the Supreme Court.

*George Becker* and *C. L. Beale*, for plaintiff in error.

*M. B. Champlain*, attorney-general, for defendant in error.

ALLEN. J. The jury have, by their verdict, found that the homicide was committed either by the accused in person or by some one acting in concert with him in the commission of a felony, and in the prosecution and furtherance of a common purpose and design.

It must be assumed, from the finding of the jury, that the prisoner was one of the three persons who burglariously

entered the store on the night of the homicide; that Merrick was killed by one of the burglars, in pursuance of the common intent of all; and that the accused either fired the shot which caused the death, or was present, aiding and abetting his confederates in the commission of the act. The presumption from the evidence, assuming that the witnesses and their statements are credible, as the jury seem to have believed, is, that the accused, in person, committed the homicide; and it is not improbable that, had the jury been left to pronounce upon his guilt or innocence upon that theory alone, without the complications resulting from the submission of the questions touching his responsibility for the acts of any other by whom the deed might have been perpetrated, the result would have been the same. There were but three persons, other than the deceased and his fellow-clerk, present. One of these was disabled and lying upon the floor seriously wounded, and the other was in the grasp of Merrick, the deceased, and was also wounded and injured. The third came up the stairs and fired the pistol which caused the death, and he alone of the three was uninjured and unwounded. The accused, when arrested a day or two after the occurrence, bore no mark of injury upon his person, and could not have been one of the two so badly injured in the encounter with the clerks. It follows, that he was either not present, and has, therefore, been wrongfully convicted, or his hand discharged the pistol which caused the death of Merrick. But the jury may have taken other views of the evidence under the charge, so that the questions made upon the trial and presented by the writ of error, upon the rules governing the liability of one to answer criminally for the acts of others, cannot be passed by without consideration.

If the homicide was committed by one of several persons, in the prosecution of an unlawful purpose or common design, in which the combining parties had united, and for the effecting whereof they had assembled, all were liable to answer criminally for the act, and, if the homicide was murder, all were guilty of murder, assuming that it was within the com-

mon purpose. All present at the time of committing an offence are principals, although only one acts, if they are confederates, and engaged in a common design, of which the offence is a part. (1 Russ. on Crimes, 27, 29.) The several persons concerned in this offence were assembled for the commission of a felony, and were engaged in the actual perpetration of the offence; and the homicide was committed upon one who was opposing them in the act, and in rescuing and aiding the confederates to escape. To this conclusion the jury must have come.

If there was a general resolution against all opposers, and to resist to the utmost all attempts to detain or hold in custody any of the parties, all the persons present when the homicide was committed were equally guilty with him who fired the fatal shot. (1 Russ. on Crimes, 29, 30.) This general resolution of the confederates need not be proved by direct evidence. It may be inferred from circumstances; by the number, aims and behavior of the parties at or before the scene of action. (Id.; Fost., 353, 354; 2 Hawk. P. C., ch. 29, § 8; *Tyler's Case*, 8 C. & P., 616.) There was enough in this case to authorize the submission of the question to the jury. An express resolution against all opposers can very seldom be proved by direct evidence; but here every circumstance tended strongly to prove it.

Some of the confederates, and perhaps all, were armed; they actually did resist all opposition with such weapons as they could successfully use. When one was detained, being overcome by the opposition, the others returned at the call of their comrade, and the only one in condition to do so, deliberately shot Merrick, who was preventing the escape of one of the confederates, and was cautioned by that confederate, when about to shoot, not to shoot him. The jury were authorized to infer that this act was within the general purpose of the confederates. They may have desisted from their larcenous attempts, and yet the full purpose of the combination not have been carried out so long as one of the party was detained and held a prisoner.

The charge of the judge was favorable to the accused upon this branch of the case, quite as favorable as the law would warrant. It was in substance that if the shot that caused the death was fired by another hand than that of the prisoner, the jury must be satisfied that there was an actual and overt concert and complicity to effect that precise object. Again, the judge charged, in response to a request of the prisoner's counsel, that the jury must be satisfied that the prisoner had fired the fatal shot which produced the death of Merrick, or that he (that is, the person actually shooting) was acting under the influence of a purpose common to all, for the promotion of a bad cause, that the others were co-conspirators with him, and that they had the same object in view, and that the same purpose actuated the breasts of all, before they could find the prisoner guilty of murder; and the same was in substance repeated in another part of the charge. Having charged thus fully and favorably to the prisoner, it was not error to decline to repeat the instructions at the close of the charge. But a charge in the terms of the request would have been improper. The request was to charge that the common guilty purpose of resisting to the death any person who might endeavor to apprehend them, must have been formed when the parties went out with a common illegal purpose of larceny. The time when the illegal combination and arrangement was made, which resulted in murder, is not material, so long as it was made before the actual commission of the offence. They may have only had a larceny in their minds when they left New York, the other intent may have been formed after they reached Binghamton, or after they entered upon the premises.

After the judge had charged, as before stated, and in response to the requests of the prisoner's counsel, had charged, 1st. That to authorize a conviction for murder in the first degree, the shot must have been fired with a premeditated design to take life, and not simply to rescue his companion. 2d. That if all the person who fired the shot, did, was intended to render help, and to rescue his endangered companion, and

not simply to kill, there could be no conviction of murder; and, 3d. That if the acts of Merrick, and the circumstances as they transpired and which were referred to in detail, and the situation and condition of the confederates, and the desire to avoid detection and arrest of any of the burglars, or their death at the hands of Merrick, aroused and heated the blood of the one who fired the fatal shot, the prisoner could not be convicted of murder; he was asked to charge, that if the prisoner and his companions, on the occasion of the homicide, entered upon the premises with the common purpose of larceny, and the violence of the prisoner's companion was merely the result of the situation in which he found himself, and that he proceeded from the impulse of the moment without any concert, then the prisoner would be entitled to an acquittal and discharge.

He had in various forms charged this proposition in substance, and had gone to the very verge of the law in favor of the accused, and explained the principles upon which, and upon which alone he could be convicted of murder, for the acts of his companions and confederates, and he was not called upon to repeat the instructions in as many forms, and with all the varieties of diction that counsel could devise. Having once distinctly, and without ambiguity, enumerated the legal propositions, it was not error to decline a repetition. We are not called upon to decide whether the prisoner was entitled to rulings as favorable as those given. Be this as it may, the judge was not bound to adopt the words of the counsel, having stated the proposition substantially as stated. (*First Baptist Church in Brooklyn* v. *Brooklyn Fire Insurance Company*, 28 N. Y., 153); *Fay* v. *O'Neill*, 36 N. Y., 11.)

The claim pressed with most earnestness in behalf of the plaintiff in error, is that the offence was reduced to manslaughter in the second degree, as having been committed in resisting an attempt of the deceased to commit a felony, the attempted felony, as claimed, being the unnecessary killing of one of the burglars, by Merrick and his fellow clerk.

The statute declares, that every person who shall unnecessarily kill another, while resisting an attempt of such other person to commit any felony, or to do any other unlawful act, shall be deemed guilty of manslaughter in the second degree. (2 R. S., 661, § 11). The prisoner claims that the killing of Merrick was within the provisions of this act. That the prisoner and his confederates, were engaged in the commission of a felony, and that the deceased could lawfully use all the force necessary, to oppose and prevent the consummation of, the felony, could properly resist all attempts to inflict bodily injury upon himself, and could lawfully detain the felons, and hand them over to the officers of the law, for prosecution and punishment, is not denied, and it would only be by the use of unnecessary or wanton violence and the infliction of unnecessary or wanton injury to the person of the criminals, that the deceased could become a wrongdoer. Without undertaking to define the boundary line which separates the lawful and authorized, from the unauthorized and illegal acts of individuals in the protection of property, the prevention of crime and the arrest of offenders, it is enough that the law will not be astute in searching for such a line of demarcation, as will take the innocent citizen, whose property and person are in danger, from the protection of the law, and place his life at the mercy and discretion of the admitted felon. They will not be made to change places upon any doubtful or uncertain state of facts.

The prisoner's counsel requested the judge, to charge the jury, that if the killing of Merrick was necessary, in order to prevent him from unnecessarily killing another, it was not murder in the first degree. This request was properly declined. There was no evidence to warrant the submission of the question to the jury. The claim upon the argument was, that the burglar who was first seized by Burrows, and struck and severely injured, both by him and the deceased, was in danger of being killed at the time of the homicide, and that it was to save the life of this man, that the deceased was killed. But the evidence is, that both Merrick and Burrows had left

this burglar, before either of the others returned to the rescue, and that neither was then harming or attempting to harm him. It could not have been, then, to prevent the unnecessary killing of that man, that the life of the deceased was taken. At the time of the homicide, the deceased was struggling with the second burglar and having him at some advantage, but there is no evidence that he was doing or attempting to do him any bodily harm, or that the burglar was in danger of bodily harm from the deceased, who made the first attack, or that the deceased was doing anything except to defend himself, or possibly to detain the man in custody and prevent his escape, does not appear. The killing was deliberate, and for some purpose other than the prevention of a felony by the deceased. A verdict that the killing was to prevent the commission of a felony, or the unnecessary killing of the person then struggling with the deceased would have been unsupported by evidence. There was no error in the refusal to charge as requested.

A question is presented by the exception to the comments of the judge upon the fact that the prisoner had not availed himself of the privilege of being sworn and giving evidence in his own behalf. By statute (ch. 678 of the Laws of 1869) persons upon trial for crime may, at their own request, but not otherwise, be deemed competent witnesses. The act may be regarded as of doubtful propriety, and many regard it as unwise, and as subjecting a person on trial to a severe if not cruel test. If sworn, his testimony will be treated as of but little value, will be subjected to those tests which detract from the weight of evidence given under peculiar inducements to pervert the truth when the truth would be unfavorable, and he will, under the law as now understood and interpreted, be subjected to the cross-examination of the prosecuting officer, and made to testify to any and all matters relevant to the issue, or his own credibility and character, and under pretence of impeaching him as a witness, all the incidents of his life brought to bear with great force against him. He will be examined under the embarrassments incident to

his position, depriving him of his self-possession and necessarily greatly interfering with his capacity to do himself and the truth justice, if he is really desirous to speak the truth. These embarrassments will more seriously affect the innocent than the guilty and hardened in crime. Discreet counsel will hesitate before advising a client charged with high crimes to be a witness for himself, under all the disadvantages surrounding him. If, with this statute in force, the fact that he is not sworn can be used against him, and suspicion be made to assume the form and have the force of evidence, and circumstances, however slightly tending to prove guilt, be made conclusive evidence of the fact, then the individual is morally coerced, although not actually compelled to be a witness against himself. The constitution, which protects a party accused of crime from being a witness against himself, will be practically abrogated.

The Legislature foresaw some of the evils and dangers that might result from the passage of this act, and did what could be done to prevent them by enacting that the neglect or refusal of the accused to testify should not create a presumption against him. Neither the prosecuting officer or the judge has the right to allude to the fact that a person has not availed himself of this statute, and it would be the duty of the court promptly to interrupt a prosecuting counsel who should so far forget himself and the duties of his office as to attempt to make use of the fact in any way to the prejudice of a person on trial. An allusion by the judge to the fact, unexplained, cannot but be prejudicial to a person on trial, and a provision intended for his benefit will prove a trap and a snare. It is an intimation to the jury of the effect upon his mind of the omission of the accused to explain by his own oath, suspicious and doubtful facts and circumstances, as affecting the question of guilt or innocence.

The judge alluded to the fact that the accused was not sworn, twice in the course of his charge; once in connection with the question of identity and the narration of the circumstances of the homicide, and again in connection with the

circumstances claimed to be suspicious, as tending to prove the presence of the prisoner at the burglary, and his connection with the other supposed burglars, and on both occasions in a manner calculated to give an impression prejudicial to the prisoner. An impression was given that at least full effect should be given to the evidence of identity, and to the narration of the transaction as given by the sole surviving witness, and to the circumstances tending to prove the connection of the accused with the offence, inasmuch as he had not contradicted the former or explained the latter. It is true the judge told the jury that the prisoner was not bound to be sworn, and that the prosecution must make out their case, but he did not say in that connection that his omission to be a witness should not create any presumption against him. Had not this been subsequently, and, upon an exception being taken, explained, it would have been a just ground of complaint by the prisoner. But the judge, upon his attention being called to his remarks, did say to the jury that there was no law requiring the prisoner to be sworn, and there was no inference to be drawn against him from the fact of his not being sworn. Inasmuch as the error of this part of the charge was that by its general terms it authorized an inference to the prejudice of the prisoner, rather than a direct statement of an erroneous proposition, we are of the opinion that the error was cured by the subsequent explanation.

The charge as given would seem to indicate that the circumstances relied upon as proving the guilt of the prisoner, had, in the mind of the judge, been entitled to additional weight as evidence, from the fact that the prisoner had not been sworn, and from it the jury might have been misled and induced to regard the fact that he had not been sworn as one circumstance against him, and as giving point and effect to all the others. But this was explained and the rule properly stated upon the final submission of the cause to the jury.

Objection was made, upon the trial, to the production in evidence of certain implements and papers found in the room and desk of the prisoner. Both the room and desk were used

somewhat in common by him and one of his associates, but he was the chief occupant. The articles were taken some time after his arrest, and evidence was given tending to show that he had the key of the room, and showing how the room had been kept during his absence ; and the prisoner, upon the trial, admitted the possession of one of the implements. Other evidence was given, also tending to connect the prisoner with the articles found in his room ; and the question of fact was properly submitted to the jury as to the connection of the prisoner with these articles, upon all the evidence. There was evidence to go to the jury upon that question. The rachet-drill, which, it was claimed, the bits with which the entry into the store was effected fitted, the prisoner admitted on the trial had been in his possession as a new invention and a curious thing. This alone was some evidence that the articles found with the drill were there while the prisoner occupied the room and used the desk, especially with the other evidence tending to show that the room had remained locked from the time he left until the articles were found and taken away.

Objection was also taken to the admission of the photographic likenesses of the two persons found drowned. Evidence was given of the manner in, and disadvantageous circumstances under which they were taken ; and the evidence was that they were not artistic pictures, nor in all respects the most perfect likenesses that could be taken. This was fully explained by the artist, and the reasons why they were not more perfect, stated. They were submitted to the witnesses, not as themselves, and alone, sufficient to enable them to identify the persons with entire certainty, but as aids, and with other evidence, to enable the jury to pass upon the question of identity. They were the best portraits that could be had, and all that could be taken. The persons were identified by other circumstances, the clothes they wore and the articles found upon their persons, and their general description ; and the photographs were competent, although slight, evidence in addition to the other and more reliable testimony. We are

of the opinion that it was not error, under the circumstances, to admit them as evidence for what they were worth. By themselves, they would have been of but little value ; but they were of some value as corroborating the other evidence identifying the bodies.

There was no error of substance committed upon the trial; and the judgment must be affirmed, and the proceedings remitted to the court below, to proceed upon the conviction and pronounce sentence of death as prescribed by law.

All the judges concurring, judgment affirmed.