# Supreme Court—General Term—First Department.

*October*, 1883.

## PEOPLE *v.* COURTNEY.

(Affirmed, 1 *N. Y. Crim. Rep.* 573.)

PERJURY.—MATERIALITY OF EVIDENCE AFFECTING CREDIBILITY.
L. 1869, CH. 678, ALLOWING DEFENDANT IN A CRIMINAL
ACTION TO TESTIFY, CONSTITUTIONAL.—STATE
CONSTITUTION, ART. 1, § 6.—VARIANCE.

To constitute perjury the false evidence must be material to the case in
which it is given, but no specific degree of materiality is required,
nor is it necessary that it should bear directly on the issue which is
being tried.

All that is required is that the false evidence have some bearing, direct or
indirect, upon the determination of the controlling fact or facts
in issue.

Whatever may tend to the credit or discredit of a witness giving material
evidence, is material, and necessarily affects the determination of the
iisue.

Defendant was asked on cross-examination if he had been in the Eastern
Penitentiary of Philadelphia, or had served a term of imprisonment
in the Eastern District of Pennsylvania. *Held*, that such an inquiry
was material to the credit of the witness, and that a false answer to
these questions was perjury.

The defendant by making himself a witness becomes subject to the same
rules of cross-examination that are applicable to other witnesses.

The provisions of L. 1869, c. 678, § 1, that a defendant in a criminal
case shall at his own request, but not otherwise, be deemed a compe-
tent witness, but that his neglect to testify shall not create any
presumption against him, are not in conflict with the State Constitu-
tion, which declares, art. I., § 6, that no person shall be compelled in
any criminal case to be a witness against himself.

The object of this provision of the State Ponstitution was not to prevent
the passing of laws allowing the accused to testify in his own behalf
if he choose to avail himself of that privilege, but to prevent the

enactment of statutes by which the accused might be subjected to actual compulsion to give evidence.

A defendant, having availed himself of the privilege accorded him by the act of testifying, cannot afterwards object that his rights were violated by his being permitted to avail himself of that privilege.

The indictment alleged that the defendant had falsely testified that he had never been in the Eastern Penitentiary. It appeared by the evidence that defendant had been imprisoned in the Eastern *State* Penitentiary. *Held,* that the omission of the word "State" in the indictment was not a fatal or serious variance, it not appearing that the prisoner was prejudiced thereby. (Per Davis, P. J.)

Appeal from a judgment of the Court of General Sessions of New York city and county, of March 13, 1882, Hon. Rufus B. Cowing, presiding, convicting the defendant Edward J. Courtney, on an indictment found January 30, 1883, of perjury.

The alleged perjury was committed June 26, 1882. Defendant having been indicted for forgery and being brought to trial, gave evidence on his own behalf. On cross-examination, he testified that he had never been arrested upon any charge of manufacturing counterfeit money in his life; that he was never in any prison, that he was never in the Eastern Penitentiary in the city of Philadelphia, that he had never served a term of imprisonment in the Eastern District of Pennsylvania, and that he had never gone by any other name than Edward J. Courtney. The assignments of perjury in the present indictment were founded upon these answers of defendant. After the trial for forgery in which defendant was convicted, on appeal to the General Term of the Supreme Court the conviction was reversed (1 *N. Y. Crim. Rep.* 64), on the ground that the evidence of defendant's accomplice was not corroborated. When the prisoner was arraigned for pleading on the present charge of perjury, he demurred to the indictment on the ground that the facts therein stated did not constitute a crime. The demurrer was disallowed, and prisoner standing mute, a plea of not guilty was entered in his behalf.

The prisoner having been convicted on this last trial of perjury was sentenced to the State Prison for the term of ten years, and then appealed to this court.

*William F. Kintzing* and *George L. Simonson,* for appellant and defendant.—*a.* The court erred in disallowing the demurrer to the indictment because the act, L. 1869, c. 678, § 1, under which the prisoner was permitted to give his evidence in which was included the alleged false testimony is unconstitutional.

It provides that a defendant in a criminal trial or proceeding " shall, at his own request but not otherwise, be deemed a competent witness, but the neglect or refusal of any such person to testify shall not create any presumption against him." This is in violation of the provision of the State Constitution, art. 1. § 6, " No person . . . . shall be *compelled* in any criminal case to be a witness against himself." The question arises upon the construction of the word *compelled.* It is of course plain that there is no *formal* compulsion in words on the person to become a witness against himself. But the statute permits him to become a witness and his failure to do so creates a presumption against him. The judge, it is true, tells the jury that the prisoner's neglect to testify shall not create an inference against him. But in spite of such an instruction, as a matter of human nature the fact that the defendant had an opportunity to go on the stand and explain, and did not do so, has an influence, an influence that is none the less real from being often an unconscious one, on the jury, and leads them to infer the prisoner's guilt from his silence.

He must go on the stand as the lesser of two evils. People *v.* Gordon, 33 *N. Y.* 508; People *v.* Hovey, 1 *N. Y. Crim. Rep.* 283; 92 *N. Y.* 554.

Compelled to go on the stand by this moral coercion, amounting really to compulsion, he is subjected at once to cross-examination to the same extent that awaits any witness. His whole past life is opened for inspection, and his character as a witness to impeachment by direct evidence, and that too, which arises from his position of testifying under such immense temptation to prevarication or falsehood. All these facts have led the courts to look upon the act of 1869 with disfavor.

In Ruloff *v.* People, 45 *N. Y.* 213, the act is said to be unwise, of doubtful propriety, and as morally coercing if not actually compelling the prisoner to testify. To the same effect is Connors *v.* People, 50 *N. Y.* 240. If the act of 1869 is

unconstitutional, then the defendant was not a competent witness upon the trial for forgery, and his testimony whether true or false was improperly and unlawfully taken, and cannot be used as the subject of an indictment for perjury; the court erred in refusing to allow the demurrer to the indictment upon the further ground that the alleged false testimony was not material to the issue.

*b.* The assignment of perjury on which a conviction is asked must be on some matter material to the issue. *Coke,* 3 *Inst.* 74, 164; 1 *Hawkins P. C.* 429; 1 *Wharton Amer. Crim. Law* (7th ed.) § 2198; 2 *Id.* § 2226; 2 *Bishop Crim. Law,* § 1030; 2 *Russell on Crimes* (3d Eng. ed.) 596; 4 *Blacks. Com.* 137; 1 *Gabbett Crim. Law,* 791; 1 *Allison Crim. Law,* 465; *Bacon Abr.* tit. "Perjury." See 2 *Russ. on Cr.* (6th Am. ed.) 600; Campbell *v.* People, 8 *Wend.* 636; Bullock *v.* Koon, 4 *Wend.* 531; Hinch *v.* State, 2 *Mo.* 158; Com *v.* Knight, 12 *Mass.* 274; Com. *v.* Ward, 116 *Mass.* 17; Gibson *v.* State, 44 *Ala.* 17; Hood *v.* State, 44 *Ala.* 81; State *v.* Aikens, 32 *Iowa,* 403; State *v.* Flagg, 25 *Ind.* 369; State *v.* Trask, 42 *Vt.* 152; Nelson *v.* State, 47 *Miss.* 621; Galloway *v.* State, 29 *Ind.* 442; State *v.* Hobbs, 40 *N. H.* 229; Hembree *v.* State, 52 *Ga.* 242; State *v.* Bailey, 34 *Mo.* 350; Com. *v.* Smith, 11 *Allen,* 243; State *v.* Hattaway, 2 *N. & M. (S. C.)* 118; Connor *v.* Com, 2 *Va. Cas.* 30; Reg. *v.* Owen, 6 *Cox C. C.* 105; Rex *v.* Naylor, 11 *Id.* 13; Custodes *v.* Howell Gwin, 1 *Styles,* 324; Reg. *v.* Murray, 1 *Fos. & Fin.* 80. See also Rex *v.* Griepe, 1 *Ld. Raym.* 258; 12 *Moo.* 139; Reg. *v.* Muscot, 10 *Moo.* 195; Rex *v.* Nicholl, 1 *B. & Ad.* 21; Rex *v.* Dunston, *Ry. & Moo.* 109; Reg. *v.* Bartholomew, 1 *C. & K.* 366; Reg. *v.* Lavey, 3 *Car. & K.* 26; 5 *Cox C. C.* 269; Rex *v.* Marton, 6 *Carr. & P.* 562; Rex *v.* Robins, 2 *Moo. & Rob.* 512; Rex *v.* Alsop, 11 *Cox C. C.* 264; Reg. *v.* Tate, 12 *Id.* 7; Reg. *v.* Harvey, 8 *Id.* 99; Reg. *v.* Berry, 8 *Id.* 121; Reg. *v.* Townsend, 10 *Id.* 356; Reg. *v.* Ball, 6 *Id.* 360.

"In some late cases the English judges have held the broad doctrine, that 'every question on cross-examination that goes to the credit of a witness is material,' and the answer, if willfully false, will be perjury. There is practical difficulty in applying the rule, and how far the American courts will carry it cannot be stated." 2 *Bishop Crim. Law* (7th ed.) § 1038.

It is true it has been held that an accused, in availing himself of the law of 1869, becomes subject to the same rules, and is called upon to submit to the same tests, that are legally applied to other witnesses. Brandon v. People, 42 *N. Y.* 265; Connors v. People, 50 *Id.* 240; People v. Casey, 72 *Id.* 393.

The questions asked defendant, related in no manner to the subject matter of the inquiry then and there tried before the court, and were collateral to the issue, being only a direct attack on the witness' credibility and character. Such evidence was not material in the sense of becoming a basis for an indictment for perjury.

c. In addition the questions asked defendant mere impertinent and incompetent and did not tend to impair the credibility of the witness, and therefore were not material to the issue. People v. Brown, 72 *N. Y.* 574; People v. Crapo, 76 *Id.* 290.

The defendant had sworn that he never was in the Eastern Penitentiary in the city of Philadelphia. The proof offered, to show the falsity of this testimony, was that he had been in the Eastern *State* Penitentiary. The prosecution failed to make out a sufficient case in that regard. No evidence was offered that the Eastern Penitentiary and the Eastern State Penitentiary were one and the same institution, nor was there any evidence that there was but one penitentiary in Philadelphia. There was not enough evidence on this point to go to the jury as to the imprisonment of defendant.

*John McKeon,* district attorney, *John Vincent,* assistant, for the people.—*a.* The line of cross-examination of defendant was authorized by *Code Civ. Pro.* § 832; *Penal Code,* § 714. The evidence was material as it went to the credibility of the witness who was testifying in his own behalf. See Wood v. People, 59 *N. Y.* 117; Reg. v. Worley, 3 *Cox C. C.* 535; Reg. v. Gibbons, 9 *Id.* 105; Reg. v. Overton, 2 *Moody C. C. Res.* 263; United States v. Elmersberg, unreported.*

*b.* The act of 1869 is constitutional. The courts have criticised it, but never declared it unconstitutional.

*c.* The prisoner did not claim his privilege, and was there-,

---

* See note, p. 570, *infra.*

fore in the same position as any other witness. People *v.* Brandon, 42 *N. Y.* 265; People *v.* Connors, 50 *Id.* 252. .

DANIELS, J.—The perjury was assigned in the indictment upon evidence which the defendant himself gave, upon the trial of an indictment against him for forgery. He was sworn as a witness on his own behalf, and he was asked whether he had been in the Eastern Penitentiary in the state of Pennsylvania, whether he had gone by any other name than that of Edward J. Courtney, and whether he had served a term of imprisonment in the Eastern District of Pennsylvania. To each of which questions he answered in the negative. Evidence was given upon the present trial, very directly tending to establish the fact that the defendant served a term of imprisonment in the Eastern District of Pennsylvania, and it was substantially upon that he was convicted and sentenced to imprisonment in the State prison. At the conclusion of the case as it was presented by the people, and also after the defendant had given his evidence, the court was requested to advise the jury to acquit the defendant, upon the ground that the alleged false statements were immaterial, irrelevant, and in no way affecting the issue, and not the subject of indictment for perjury. These requests were denied and the defendant excepted, and such exceptions are now relied upon in support of the appeal.

It is undoubtedly the law that the evidence assigned as perjury in an indictment, must be material to the cause in which it is given, but to satisfy this rule no specific degree of materiality can be required, neither is it necessary that the evidence should bear directly upon the issue which at the time is being tried. But for the purpose of subjecting the person giving it, when it may be willfully false, to punishment, for the crime of perjury, all that can be required is that it shall have some bearing, either direct or indirect upon the determination of the controlling fact or facts in issue. And when a witness gives material evidence it is always important to ascertain and discover how much weight, or reliance, can be placed upon his testimony. Whatever may weaken or tend to discredit his evidence is important and material and necessarily affects the determination of the issue. Shepard *v.* Parker, 36 *N. Y.* 517.

If the testimony of the witness is unassailed by any discrediting circumstances, then it will obviously be attended with greater effect in the determination of the controversy, than it would be, if he should be shown to be a person unworthy of full credit. Whatever may tend to sustain or support a witness is, therefore, material to the issue, so far as it may increase the confidence to be placed in his statement. And, likewise, whatever may tend to discredit him, and in that manner to reduce the confidence his evidence may deserve, will materially affect the determination of the issue in controversy. No special degree of materiality to create the crime has been defined or required, but all that can be insisted upon, is that the evidence itself shall appear to have had some material bearing in the determination of the case, and whatever may tend to the discredit of the witness, giving material evidence, must be regarded as within this rule. In Reg. *v.* Overton, 2 *Moody C. C.* 263, it was held that everything was material that affects the credit of the witness. That every question on cross-examination that goes to the credit of the witness is material. The same point was further considered in Reg. *v.* Gibbons, 5 *Law Times N. S.* 805, 31 *L. J. M. C.* 98, and the rule, as it has already been stated, was repeated and sustained, and in Commonwealth *v.* Bonner, 97 *Mass.* 587, the same conclusion was declared. And in Commonwealth *v.* Pollard, 12 *Met.* 225, it was held generally that evidence which is circumstantially material, will be sufficient to sustain an indictment for perjury. And in State *v.* Lavalley, 9 *Mo.* 834, it was in terms declared by the court that all false oaths which are material upon any and every collateral issue, in the progress of a cause, are equally punishable as if taken upon the trial of the main issue. *Id.* 828. In Reg. *v.* Larey, 3 *Car. & K.* 26, the inquiry made of the witness was very similar to that presented by this case, and it was held to be a proper foundation for an indictment for perjury.

That such an inquiry as that which was made of the witness concerning his imprisonment in the Eastern Penitentiary of Pennsylvania was material to the credit of the witness, and for that reason could properly be made, was held in Real *v.* People, 42 *N. Y.* 270, 289–2. And the same view was taken of it in Commonwealth *v.* Bonner, *supra.* And that, in the judgment

of all reflecting persons would be the effect of the answer if the witness had stated that he had been so confined in prison. For the inference from it would be that his confinement resulted because of his conviction of a criminal offense. And less credit would be due to the statement of such a person, than to those obtained from a witness who could not properly be charged with violation of the criminal laws. For all the purposes of the present case the evidence was material within the prevailing rule of law upon the subject, and as it was untruthfully and knowingly given, an indictment for perjury could lawfully be predicated upon it.

It was further urged in support of the appeal that chapter 678 of the Laws of 1869, under which the defendant was allowed to testify, was an unconstitutional exercise of legislative authority. This objection has been taken under that part of section 5, article 1 of the Constitution, which declares that no person shall be compelled in any criminal case to be a witness against himself. But the statute by no construction of language requires the accused to be a witness against himself, but leaves it entirely optional with him, whether he will take the stand in that capacity or not. And it has guarded against the consequences of his neglect to do so, by declaring that the omission shall not create any presumption against him. In form, it has left the accused with the fullest possible liberty upon this subject. But it has been urged, notwithstanding this circumstance, that a moral coercion has been imposed upon him by the act under which he is obliged to become a witness for himself or to subject himself to the suspicions of guilt by reason of his omitting to do so, and the case of Ruloff v. People, 45 N. Y. 213, has been cited as sustaining this view. But while the policy of the act was there made the subject of adverse criticism by the court, it was not intended to hold that it violated this restraint of the constitution. It was considered impolitic for the reason that the failure of the accused to avail himself of the privilege secured by the statute, might lead the jury to believe him guilty. And there may be grounds in some cases for such a suspicion. But ordinarily no danger to the accused, as a matter of fact, arises out of this circumstance. For intelligent jurors will usually guard themselves against any presumption

unfavorable to the accused, whenever their attention may be directed to the necessity of doing so.  The act was passed as a favorable measure of legislation to persons accused of crime, and if it has generally failed to be productive of their acquittal, the fact is to be attributed not to the law, but to the statements and demeanor of the party, when he may be called upon to give evidence in his own behalf.  For if he is guilty of the charge made against him, some fact or circumstance will ordinarily appear, producing unequivocal assurance on that subject.  It is from that source that the law has not resulted in securing the acquittal of the accused as frequently as it may have been anticipated it would, at the time when it was enacted.

The object of this prohibition of the constitution was not to prevent the enactment of laws allowing the accused to be sworn in his own behalf, if he chose to avail himself of that privilege, but it was to prevent the enactment of laws by which the accused might be subjected to actual compulsion to give evidence concerning the subject matter of the accusation.  In many European countries laws of this character existed. 2 *Story on Const.* 3 ed. § 1788, 4 *Sharsw. Blackstone,* 325–6.  And it was the most unequivocal design to denounce their propriety and render their repetition impossible in this state, that this prohibition was inserted in the Constitution.

Article 5 of the amendments of the Constitution of the United States contains the same prohibition, and still it was not considered as an obstacle in the way of the passage of a similar act by the Congress of the United States.

That act is as broad and subject to the same qualification as the law of 1869 enacted in this state (Sup. to the U. S. Rev. Stat. vol. 1, chap. 37), and like laws have been enacted in very many of the other states of the Union.  But neither of these acts have been declared to be in violation of this constitutional provision by any court, either State or National, and that certainly is very forcible evidence of the conviction that the act is not justly liable to this objection.

Besides that, the defendant voluntarily availed himself of the privilege secured to him by this act, and after having done so, it is difficult to perceive how the objection can be properly

made that any of his rights were violated by availing himself of this privilege. It must therefore, be overruled.

It has also been urged that the question and answer now made one of the subjects of the indictment was an improper one to be propounded to the defendant as a witness. But when he placed himself upon the stand, and gave his evidence, it was within the province of the public prosecutor to show by his cross-examination, if that could be done, that his statements were unworthy of credit. For by making himself a witness, he became subject to the same rules of cross-examination made applicable to other witnesses in legal proceedings. People v. Casey, 72 N. Y. 394.

And if his answer had been that he was confined as a prisoner in the Eastern Penitentiary, that would have tended very directly to support this position. Brandon v. People, 42 N. Y. 265 ; People v. Crapo, 76 Id. 288.

There is a discrepancy between these cases concerning the propriety of the answer whether the witness had previously been arrested upon a criminal charge. In the first case, it was held to be proper, but in the last that practice was condemned, as probably it should be, inasmuch as no inference of guilt can be drawn from the mere circumstance of a criminal arrest.

Other points have been raised in behalf of the defendant, but they are in substance, more or less, in the nature of repetitions of those which have been considered, and for the disposition of the case, it is not necessary that any special attention shall be bestowed upon them. The case in all these respects was properly disposed of on the trial, and the judgment from which the appeal has been taken should be affirmed.

BRADY, J., concurs.

DAVIS, P. J.—The appellant was indicted for the crime of perjury. The perjury for which the indictment was found was alleged to have been committed on the trial of an indictment in the Court of General Sessions against the appellant for the crime of forgery. The appellant offered himself as a witness in his own behalf, and being duly sworn, gave testimony to the effect that he, the said Edward J. Courtney, had never been

arrested upon any charge of manufacturing counterfeit money in his life; that the said Edward J. Courtney was never in any prison, and that he was never in the Eastern Penitentiary, in the city of Philadelphia, in the state of Pennsylvania, and that he had never served a term of imprisonment in the Eastern District of Pennsylvania, and that he had never gone by any other name than that of Edward J. Courtney.

The indictment averred the contrary of each of these statements to be true, and charged the appellant with having " falsely, wickedly, willfully, knowingly, unlawfully and corruptly, committed willful and corrupt perjury" in giving such testimony. To this indictment the appellant by his counsel filed a demurrer in writing, on the ground that the facts stated in said indictment did not constitute a crime. Upon the hearing of the demurrer, the court overruled the same and ordered that the defendant plead to the indictment.

The principal point presented by the demurrer is that the statute under which the appellant was permitted upon the trial of the indictment for forgery to offer himself and be sworn as a witness on his own behalf is unconstitutional.

The statute is in these words: " In the trial of all indictments, complaints and other proceedings against persons charged with the commission of crimes or offenses, and all proceedings in the nature of criminal proceedings in any and all courts, and before any and all persons acting judicially, the person so charged shall, at his own request, but not otherwise, be deemed a competent witness, but the neglect or refusal of any such person to testify shall not create any presumption against him." *Laws* 1869, p. 1597.

Section 5 of article 1 of the Constitution of this state provides that no person shall be compelled in any criminal case to be a witness against himself.

The plain signification of this provision is best expressed in its own words. It is designed to prohibit the compulsion of any witness, in any criminal case, to give testimony against himself, and it was aimed of course at all the proceedings of that nature which had ever existed in the past, under the common law or otherwise, by which persons charged with crime could be compelled in any manner to be witnesses against themselves. It

was the long established rule of the common law that no person charged with crime could be called as a witness in his own behalf.   On the trial of any indictment his mouth was effectually closed, first by the provision of the Constitution, which prevented the people from calling him to testify, and second, by the rule of the common law which excluded him from testifying in his own behalf.   The act of 1869 was intended to be a relaxation of the common law rule, by allowing a person charged with crime, *at his own request*, but not otherwise, to "be deemed a competent witness."   It followed the previous enactments which had enabled parties in all civil actions to be witnesses on the trial of their own suits; and it was intended to enable a person accused of crime to lay before a court and jury such evidence as he might be able to give, in answer to or explanation of the alleged offense and of the evidence tending to establish the same.   It sought to prevent his omission to make himself a witness from creating any presumption against him.   The idea of compulsion does not enter into the statute at all.   The constitutional provision remains in full force unaffected by the statute.

But it is argued that since the statute permits a person accused of crime to make himself a witness in his own behalf, therefore, courts or jurors will be in some degree prejudiced against him, by his neglect to avail himself of the permission. But the statute expressly provides that his neglect or refusal shall not create any presumption against him and, therefore, it cannot be *legally* assumed that any such presumption can or will arise from the mere existence of the statute.   The supposed "moral coercion" is not a matter of legal cognizance for the purpose of holding that the statute is void as against the Constitution.   Nor indeed, in practice, does it have any such effect. The courts, if desired to do so, are always extremely careful to caution the jury against indulging in any such presumption; and it seems to us a *non sequitur* to say that there is or can be such a compulsion as the Constitution prohibits, in the simple fact that the law has conferred upon a party charged with crime, a privilege of which at his own option he may or may not avail himself.

The question of the policy or expediency of the law is not presented for consideration by the demurrer; and of course it

is not our province to pass upon that. Any party may waive a constitutional provision in his own behalf at any time, and the waiver, when properly made, puts him precisely in the position as though the constitutional provision in his favor did not exist. It follows, therefore, and is now well settled that where, under the provisions of the statute above cited, a person accused of crime elects to become a witness in his own behalf he occupies the same position as any other witness and may be fully examined in conformity to the established rules of evidence, to contradict any testimony he may give, or to impeach or impair his own credibility, in the same manner as that of any other witness may be impaired.

We are referred to the cases of People v. Ruloff, 45 *N. Y.* 213, and Connors v. People, 50 *Id.* 240, for the expression of views in decided hostility to the policy or constitutionality of the law of 1869. But the question of its constitutionality was not before the court, and there is nothing in the opinions to lead us to the conclusion that the statute is unconstitutional. Those opinions were delivered at a time when the act of 1869 was in general disfavor with lawyers accustomed to the former rule, and before its policy had been vindicated or tested by experience. It may be said to be doubtful whether the same views would be expressed after the experience of the effect of the statute for the last ten years.

The other point made under the demurrer is that the testimony set forth in the indictment and alleged to have been false was not material to the issue of the trial. The rule undoubtedly is, that the assignment of perjury must be a matter pertinent and material to the issue or case in question. But it is well settled that the credibility of a witness who gives testimony affecting an issue is always material; and hence legal testimony which affects such credibility is always within the issue on trial.

Archbold lays down the rule thus: " Every question in cross-examination which goes to the credibility of a witness is material for this purpose." *Archibald Crim. Pr.* 817. This rule was declared by the twelve judges in Reg. v. Gibbon, 9 *Cox C. C.* 105. In Reg. v. Lavey, 3 *Carr. & K.* the accused had falsely sworn that she had never been tried in the Central Criminal Court and had never been in custody at the Thames

Police Station. On her trial for perjury these statements were held to be material, and her conviction was sustained. In the Commonwealth *v.* Bonner, 97 *Mass.* 587, the witness was asked if he had been in the House of Correction for any crime. This question was objected to as immaterial, but it was held to be material. See also Wood *v.* People, 59 *N. Y.* 17; Reg. *v.* Worley, 3 *Cox C. C.* 535; Reg. *v.* Gibbons, *supra;* Reg. *v.* Overton, 2 *Moody Crown Cases Res.* 263.

In the case of the United States *v.* Elmersberg before BENEDICT, J., this precise question was presented and fully examined, and in the manuscript opinion in that case, now before us, the court reached the same conclusion we have expressed.*

---

* U. S. Circuit Court, Second Circuit, (Southern District of New York), June, 1883. United States *v.* Elmersberg.

BENEDICT, J.—The accused having been convicted of perjury, now moves for a new trial and in arrest of judgment. The principal question presented for determination is whether the crime of perjury was committed by the accused when he made the false statement under oath, as set forth in the indictment. This statement was made under the following circumstances, as shown at the trial. The accused had been arrested by virtue of a commissioner's warrant upon a charge of having uttered counterfeit coin. He demanded an examination, and upon such examination, duly held before the commissioner, he offered himself as a witness in his own behalf and was duly sworn as such. Upon his cross-examination, in answer to a question put without objection, he testified that he had not been in prison in this state or in any other state, when the fact was that he had been imprisoned in the State prison of this state and also in the State prison of New Jersey.

Thereafter the present indictment was found against him, in which the perjury assigned is testifying, under the circumstances above stated, that he never was in prison in this state or in any other state.

On the part of the accused the point made is that the false matter so stated by the accused before the commissioner was not material matter within the meaning of the statute, and therefore, the crime created by the statute was not committed.

The essential element of the offense created by the statute (R. S. § 5392) is the materiality of the matter charged to have been falsely stated. The words employed in that statute are "material matter." These words were doubtless adopted from the common law, and they must be given a significance broad enough at least to cover cases of perjury at common law. The rule of the common law in regard to perjury is thus stated by Archibald : Every question in cross-examination which goes to

We are, therefore, of opinion that the demurrer was properly overruled.

On the trial the record of the conviction in the District Court of the United States for the Eastern District of Pennsylvania of a person by the name of Christopher Richards upon his plea of guilty of the offense charged in the indictment and his sentence thereupon to be imprisoned in the Eastern Penitentiary in the commonwealth of Pennsylvania for the term of three years was put in evidence, and a witness, who was an overseer at the Eastern Penitentiary, was called and testified that the prisoner at the bar was imprisoned in that penitentiary on a sentence of three years and served his time, by the name of Christopher Richards.

---

the witness's credit is material for this purpose. *Arch. Crim. Pr. & Pl.* 817. The same rule was declared by the twelve judges in Reg. *v.* Gibbons, 9 *Cox C. C.* 108.

The inquiry here, therefore, is whether the imprisonment of the accused in this state and in New Jersey was calculated to injure his character, and so to impeach his credit as a witness, for it is not to be doubted that when the accused offered himself as a witness he placed himself upon the same footing as any other witness, and was liable to be examined in the same manner. Upon this question it is our opinion that the matter stated by the accused as a witness had an obvious bearing upon the character of the witness, and could properly be considered by the commissioner as determining what credit would be given to the testimony of the witness in respect to the crime with which he stood charged. In Reg. *v.* Lavey, 3 *C. & K.* 29, the accused, when a witness had falsely sworn that she had never been tried in the Central Criminal Court and had never been in custody at the Thames Police Station. On her trial for perjury these statements were ruled to be material matter and conviction was sustained. In Commonwealth *v.* Bonner, 97 *Mass.* 587, a witness had been asked "if he had been in the House of Correction for any crime?" Objection to the question on the ground that the record was the best evidence was waived, and the case turned upon the materiality of the question. The matter was held to be material. The present case is stronger, for here no objection whatever was interposed to the inquiry respecting the imprisonment of the accused. Having made no objection to the inquiry and gained all the advantage to be secured by his false statement, it may perhaps be that it does not lie in his mouth now to say that his statement was not material. See Rex *v.* Gibbons, *supra;* Rex *v.* Mullany, *L. & C.* 593. But however this may be, it is our opinion that the statement he made was material matter within the meaning of the statute, because calculated to affect his credit as a witness.

Another witness was also called, who testified substantially to the same effect, and both witnesses identified the present appellant as the person who was imprisoned by the name of Christopher Richards. It appeared on cross-examination of one of the witnesses that the official designation of the penitentiary which they called "the Eastern Penitentiary," is "the Eastern State Penitentiary of Pennsylvania." The assignment of perjury in the indictment is that the appellant testified "that he, the said Edward J. Courtney, had never been arrested upon any charge of manufacturing counterfeit money in his life; that he, the said Edward J. Courtney, was never in any prison, and that he was never in the Eastern Penitentiary in the city of Philadelphia, in the state of Pennsylvania, and that he had never served a term of imprisonment in the Eastern District of Pennsylvania, and that he had never gone by any other name than that of Edward J. Courtney."

It is now insisted that there is a fatal variance in the testimony, inasmuch as it was not shown that the Eastern Penitentiary and the Eastern State Penitentiary were one and the same institution, and that the evidence that the defendant was in the Eastern State Penitentiary was not evidence to show that he was in the Eastern Penitentiary.

We do not think there is any force in this objection. The appellant testified that he was never in any prison, and that he was never in the Eastern Penitentiary in the city of Philadelphia. The evidence showed that he was in a penitentiary; that he had been imprisoned; that he was in the Eastern Penitentiary in the city of Philadelphia and state of Pennsylvania, the legal title of which is the Eastern State Penitentiary.

It is evident that the common title of the prison was the Eastern Penitentiary, and that the legal title of the prison known by that name is the Eastern State Penitentiary. If this be a variance, it is not, we think, a fatal or serious one, because it is obvious that the prisoner was not in any degree prejudiced by the omission of the word "State," either in his testimony, on the former trial, or in the charging part of the indictment.

These are all the points suggested to us on the argument which we deem of sufficient importance to comment upon any

further than to say that none of those not noticed by us are of any practical value.

The result is that the judgment and conviction should be affirmed.

NOTE.—See note *infra*, p. 576.